UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NANCY LOOMIS and GERALD LOOMIS, husband and wife, and as Personal Representatives of the ESTATE of KELLY LOOMIS<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PUYALLUP POLICE DEPARTMENT, a municipal corporation; AMBROSE J. SEITZ and "JANE DOE" SEITZ, husband and wife; and ROGER COOL and "JANE DOE" COOL, husband and wife;<br><br>Defendants. | Case No. C02-5417RJB<br><br>OPINION AND ORDER |

This matter comes before the Court on Defendant's Motion for Summary Judgment Re: Federal Claims (Dkt. 72) and Defendants Seitz and Cool's Motion for Summary Judgment re: Qualified Immunity, and Punitive Damages (Dkt. 75). The Court has reviewed all documents filed in support of and in opposition to these motions, has reviewed the entire file, and is fully advised.

**I.   BASIC and PROCEDURAL FACTS**

In late April 2001, Kelly Loomis quit taking his schizophrenia medication. On May 2, 2001, Loomis had his grandmother drive him to the Good Samaritan Medical Health Clinic in Puyallup. Dkt. 87, Ex. A, at 2. While he was at the clinic, the staff called 9-1-1. *Id.* Puyallup

OPINION AND ORDER - 1

Police Officers Seitz (Defendant), and Lewis responded. Dkt. 87, Ex. A, at 2. After speaking with Loomis, the officers felt that there was no problem and left the scene. *Id.*

A few hours later, staff at the clinic again called the Puyallup police. *Id.* at 3. Loomis had apparently punched some people. *Id.* Seven to ten members of the clinic staff were holding Loomis on the ground. *Id.*, Ex. B. Loomis was struggling. *Id.* Once he arrived, Officer Seitz tried to handcuff Loomis, who resisted. *Id.* Ex. A, at 2. Officer Seitz struck Loomis in order to handcuff him. *Id.* Plaintiff's expert acknowledges that this sort of "distraction strike" to handcuff someone, as used here by Officer Seitz, was a legitimate technique. Dkt. 73, Ex. I.

After that point, there are multiple disputes of fact. Plaintiffs allege that Officer Seitz lifted Loomis up by his handcuffed wrists. Dkt. 87, Ex. F, at 14-15. Officer Seitz denies this. Dkt. 87, Ex. B at 163. Plaintiffs allege Officer Seitz pushed or ran Loomis into the door twice while trying to get him out the door. Dkt. 87, Ex. A, at 24. Officer Seitz denies shoving him into the door. Dkt. 87, Ex. B, at 166. After Officer Seitz got Loomis outside and on the ground, Plaintiffs allege that Officer Seitz punched him in the head or back a few times while kneeling on him. Dkt. 87, Ex. F, at 74. Officer Seitz denies kneeling on Loomis with both knees and denies striking Loomis outside. Dkt 87, Ex. B, at 179-181. The parties agree Loomis then vomited. Dkt. 187, Ex. A, at 22. Loomis continued to struggle. Dkt. 187, Ex. A, at 5. The paramedics soon arrived. *Id.* While they were trying to strap Loomis to a backboard, he stopped breathing. *Id.* He was pronounced dead at Good Samaritan Hospital. *Id.* Loomis' death certificate indicates the cause of death was pulmonary aspiration of vomit due to or as a consequence of his schizophrenia with agitated delirium. Dkt. 73, Ex. B.

On August 12, 2002, Plaintiffs Nancy and Gerald Loomis, as husband and wife and as personal representatives of the Estate of Kelly Loomis, filed the underlying complaint. Dkt. 1. After considering a motion for summary judgment on Plaintiffs' state law claims, this Court certified the following question to the Washington Supreme Court: Must a parent of an adult child have been financially dependent upon that child as a condition precedent to commencing suit for the child's injury or death pursuant to RCW 4.24.010; RCW 4.20.010; and RCW

OPINION AND ORDER - 2

4.20.020; and/or RCW 4.20.060? Dkt. 34, at 2. The Washington Supreme Court held that "RCW 4.24.020 requires that parents be financially dependent on an adult child in order to recover for that child's injury or death." *Philippides v. Bernard*, 151 Wash.2d 376, 388 (2004). As a consequence, on June 4, 2004, this Court summarily dismissed all of Plaintiffs' claims except the claims under 42 U.S.C. § 1983. Dkt. 42.

Defendants now make two summary judgment motions regarding the remaining claims. Issues from both Motions are interrelated and will, in part, be addressed together. This Opinion and Order will deal with each of the issues raised in the two Motions as follows (with a docket designation indicating the source of the issue): (1) Plaintiffs' standing (Dkt. 72); (2) Qualified immunity for Officer Seitz (Dkt. 75), including whether there are issues of fact regarding probable cause for arrest (Dkt. 75), a fourth amendment violation (Dkt. 75) and a fourteenth amendment violation (Dkt. 72 at 7-12); (3) Qualified immunity for Officer Cool (Dkt 75); (4) Punitive damages (Dkt. 75); and (5) whether the City of Puyallup Police Department is a proper defendant (Dkt. 75).

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence

OPINION AND ORDER - 3

supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B.    STANDING UNDER § 1983**

Rights under the Fourth Amendment are personal rights which may not be vicariously asserted. *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998). Generally, only the person whose Fourth Amendment rights were violated can sue to vindicate those rights. *Id.* "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Id.* (citing 42 U.S.C. § 1988). It is the party seeking to bring a survival action who bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action. *Id.*

Here, Plaintiffs have failed to meet that burden. "Washington's four interrelated statutory causes of action for wrongful death and survival each require that parents be 'dependent for support' on a deceased adult child in order to recover." *Philippides*, 151 Wash.2d at 386 (citing RCW 4.20.010 (child injury/death); RCW 4.20.020 (wrongful death);

OPINION AND ORDER - 4

RCW 4.20.046 (general survival statute); RCW 4.20.060 (special survival statute)). "The phrase 'dependent for support' as used in these statutes has consistently been interpreted by the courts to mean financial dependence." *Philippides*, 151 Wash.2d at 386. The *Philippides* court further found that RCW 4.24.020 also "requires that parents be financially dependent on an adult child in order to recover for that child's injury or death." *Id.* at 388.

It is undisputed that Loomis was unmarried and did not have any children. It is also undisputed that Loomis' parents were not financially dependant upon him. Although Plaintiffs are correct in that a person's personal representative may bring a wrongful death action under RCW 4.20.010, Plaintiffs fail to acknowledge that RCW 4.20.020 requires that any such action must be brought for either the spouse or children of the decedent, or if there is no spouse or children, then for the financially dependant parents of the decedent.

Plaintiffs urge this Court to adopt the approach of another Federal District Court in Washington. Dkt. 82, at 4. In *Davis v. City of Ellensburg*, the court found that because application of the Washington survival and wrongful death statutes in a § 1983 case brought by the parents of an adult allegedly killed by police were inconsistent with the fundamental policies behind § 1983, those statutes should not act as a bar to the case, citing 42 U.S.C. § 1988. *Davis*, 651 F.Supp. 1248 (E.D. Wash. 1987). This Court finds *Davis* persuasive. The court's reasoning is well set out and need not be fully repeated here. "The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978). It appears that if the Washington survival and wrongful death statutes were permitted to operate in § 1983 cases such as this one, it is possible that abuses of power by those acting under color of state law, which resulted in death, could occur without consequences so long as the decedent was not married, and had no children, nor dependant parents. The fundamental policies behind § 1983, compensation of those injured by a deprivation of federal rights and deterrence, would be totally subverted in such cases. Damage to an individual due to a deprivation of federal rights should not hinge on familial structure. Fourth Amendment claims

OPINION AND ORDER - 5

in cases like this one are brought by the estate on behalf of the decedent. Who stands to inherit is not relevant to the basic issues. In light of the fundamental policies behind § 1983 and § 1988, the Washington wrongful death statutes and survival statutes should not act as a complete bar to Plaintiffs' case. Defendants' Motion for Summary Judgment should not be granted on this basis.

### C.   QUALIFIED IMMUNITY REGARDING OFFICER SEITZ

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"A private right of action exists against police officers who, acting under the color of state law, violate federal constitutional or statutory rights." *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001) (citing 42 U.S.C. § 1983). "The Supreme Court has established a two-part analysis for determining whether qualified immunity is appropriate in a suit against an officer for an alleged violation of a constitutional right." *Boyd v. Benton County*, 374 F.3d 773, 778, (9th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court required to rule upon qualified immunity must examine (1) whether the officers violated the plaintiff's constitutional rights on the facts alleged and (2) if there was a violation, whether the constitutional rights were clearly established. *Id.* (internal citations omitted). As to the first inquiry, where "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier* at 201. As to the second inquiry, "'[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.'" *Saucier* at 202.

1.   <u>Have Plaintiffs Raised Issues of Fact Which Would Establish</u>

OPINION AND ORDER - 6

Constitutional Violations?

This Opinion and Order will first address Defendants' argument that there was probable cause to arrest Loomis, then Plaintiffs' fourth amendment excessive force claim, and lastly Plaintiffs' fourteenth amendment claim. The first inquiry under *Saucier* is whether a constitutional right was violated.

a.   Probable Cause

"An arrest is unlawful unless there is probable cause to support the arrest." *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 840 (9th Cir. 2003). Here, Plaintiffs offer no evidence to contradict Defendants' evidence that Officer Seitz had probable cause to arrest Loomis for assault. Summary Judgement is proper on this issue.

b.   Excessive Force

"Under the Fourth Amendment, officers may only use such force as is objectively reasonable under the circumstances." *Boyd*, 374 F.3d at 778. "Determining whether a particular use of force is reasonable requires the fact-finder to balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* at 778-79. Accordingly "[t]his balance must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The need for such balancing means that summary judgment in excessive force cases should be granted sparingly." *Id.* Consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Jackson,* 268 F.3d at 651.

There are multiple issues of fact as to what Officer Seitz did on the day in question. To say the least, there are material issues of fact on the issue of excessive force as is explained on page 2, line 10-22 of this Opinion and Order. In regard to the first inquiry under *Saucier*,

OPINION AND ORDER - 7

Plaintiffs have provided ample issues of fact as to whether a fourth amendment constitutional violation occurred.

         c.  Due Process

In addition to alleging a fourth amendment violation, Plaintiffs also allege that Officer Seitz violated their fourteen amendment due process right to the companionship of their son. Defendants, in their Motion for Summary Judgment re: Federal Claims, argue essentially that no fourteenth amendment violation occurred for several reasons: (1) Plaintiffs do not have protected liberty interest in their adult child, (2) the proper standard under which to analyze Officer Seitz's behavior is the "shock the conscience" standard and Plaintiffs cannot raise issues of fact in that regard, (3) Plaintiffs can not show that Officer Seitz intentionally interfered with their relationship with Loomis, and (4) because a jury will find Officer Seitz did not cause Loomis's death, Plaintiffs can not establish a liberty interest. Dkt. 72, 7-12. Because all of these arguments are relevant to the first *Saucier* inquiry, whether the plaintiffs' constitutional right was violated, they will be addressed here in the context of qualified immunity.

"The Ninth Circuit recognizes that a parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child." *Curnow v. Ridgecrest Police, et al.,* 952 F.2d 321, 325 (9th Cir. 1991). Parents and children of a person killed by law enforcement officers may assert a Fourteenth Amendment due process claim based on the deprivation of their liberty interest arising out of their relationship with a person killed by law enforcement. *Moreland v. Las Vagas Metro Police Dept.*, 159 F.3d 365, 371 (9th Cir. 1998). Although the Ninth Circuit Court of Appeals has not directly ruled on whether parents of an adult child have a protected liberty interest in their relationship with that child, this circuit has implicitly recognized their right to pursue the claim. *Id.* (recognizing the mother of an adult child's right to pursue a fourteenth amendment claim); *Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998) (same); *Ward v. City of San Jose,* 967 F.2d 280, 283 (9th Cir. 1992) (recognizing the parents of an adult child's right to pursue a fourteenth amendment claim);

OPINION AND ORDER - 8

*Venerable v. City of Sacramento*, 185 F.Supp. 2d 1128, 1131 (E.D. Cal. 2002)(same). Accordingly, this Court will follow suit.

The standard under which to analyze Officer Seitz's behavior is also at issue. There is also no Ninth Circuit case law on point, but in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the United States Supreme Court considered the standard of culpability applicable to substantive due process claims arising from the unintentional killing of an individual by law enforcement officers. *Moreland*, 159 F.3d at 372. The *Lewis* Court held that in the context of high speed chases "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." 523 U.S. at 836. Although the Supreme Court limited their holding in *Lewis* to the facts of that case, the Ninth Circuit in *Moreland* extended the rule to include a situation where a bystander was killed during a gun fight with police. The *Moreland* court noted that police officers are often forced to act decisively and make decision in haste, under pressure, and frequently without the luxury of a second chance. 159 F.3d at 372. The *Moreland* court further focused on the Supreme Court's reasoning in *Lewis*:

> [W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed. Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case.

*Id.* "[T]he critical question in determining the appropriate standard of culpability is whether the circumstances allowed the state actors time to fully consider the potential consequences of their conduct." *Id.* at 373.

Here, it is clear that Officer Seitz had to make instant decisions in his attempt to gain control of a highly volatile situation. He did not have time to fully consider the potential consequences of his conduct. As a consequence, this Court must determine if Plaintiffs have produced evidence that indicates Officer Seitz's "conduct shocks the conscience." Plaintiffs have produced evidence that if proven, is adequate to meet this standard. For example, Plaintiffs allege that while Officer Seitz had Loomis on the ground outside on the cement, Officer Seitz

OPINION AND ORDER - 9

was punching him in the head or back in such a manner that a bystander expressed concern that Loomis would have broken teeth. Dkt. 87, Ex. F at 20. This evidence raises the specter of an intent to do harm unrelated to the legitimate use of force.

Defendants remaining arguments are unavailing. Defendants citation to a Third Circuit Court of Appeals case for the proposition that Plaintiffs needed to produce evidence that Officer Seitz specifically intended to interfere with the parents fundamental rights is unpersuasive. Dkt. 72, at 11. The law cited by Defendants is not applicable or controlling. Defendants also argue that Plaintiffs can not recover if a jury finds that Officer Seitz's actions were not the cause of Loomis's death. Dkt. 72, at 11-12. A material issue of fact remains as to whether he did in fact cause Loomis's death. Dkt. 87, Ex. G. Summary judgement is not appropriate on this issue.

### d. Conclusion

In light of first *Saucier* inquiry, Plaintiffs have provided sufficient evidence upon which a jury could find that Officer Seitz violated the Fourth and Fourteenth Amendment. It is appropriate to turn to the next part of the *Saucier* inquiry.

### 2. Were the Fourth and Fourteenth Amendment Rights Clearly Established?

"The second part of the *Saucier* analysis asks whether the plaintiff's constitutional right was clearly established at the time of the injury." *Boyd*, 374 F.3d at 780. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 780-81. "In other words, an officer who makes a reasonable mistake as to what the law requires under a given set of circumstances is entitled to the immunity defense." *Id.*

The next step in *Saucier* to determining whether Officer Seitz has immunity, as he alleges, is to ascertain if Loomis's constitutional right was clearly established at the time of the injury. *Saucier*, 533 U.S. at 201. In excessive force cases, the inquiry is whether "under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and whether any mistake to the contrary would have been unreasonable." *Boyd* at 781; *Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003). If all the facts

OPINION AND ORDER - 10

alleged by Plaintiffs are true, a reasonable officer would have fair notice that the force employed was unlawful and that his actions would result in a violation of the Plaintiffs' fourteenth amendment rights. The argument that the Ninth Circuit has not ruled on the rights of parents in regard to adult children is unavailing as several cases have acknowledged that right, providing Officer Seitz with the proper notice. *Moreland,* 159 F.3d at 371 (recognizing the mother of an adult child's right to pursue a fourteenth amendment claim); *Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998) (same); *Ward v. City of San Jose,* 967 F.2d 280, 283 (9th Cir 1992) (recognizing the parents of an adult child's right to pursue a fourteenth amendment claim); *Venerable v. City of Sacramento*, 185 F.Supp. 2d 1128, 1131 (E.D. Cal. 2002)(same). Officer Seitz is not entitled to qualified immunity.

### D. QUALIFIED IMMUNITY REGARDING CHIEF COOL

"A supervisor may be held liable under § 1983 if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Jackson,* 268 F.3d at 653. Chief Cool is liable in his individual capacity if he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury. A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, (9th Cir. 1998) (internal quotations and citations omitted).

Plaintiffs make no allegation that Chief Cool was personally present or knew of the events that give rise to this matter before they occurred. The core of Plaintiffs' complaint against Chief Cool was that he failed to properly supervise Officer Seitz. Dkt. 83 at 15. Although no published Ninth Circuit case has ruled on the issue, parties agree that in order to establish that Chief Cool is individually liable to Plaintiffs, Plaintiffs have to produce evidence that Chief Cool's failure to supervise Officer Seitz amounted to "deliberate indifference." Dkt.

OPINION AND ORDER - 11

75, at 13 and Dkt. 83, at 16 (citing *Gutierrez-Rodriguez v. Cartagena, et al.,* 882 F.2d 553 (5th Cir. 1989)). To that end, Plaintiffs point to the following: (1) a 1994 incident where Officer Seitz grabbed a suspect by the neck, leaving a red finger mark and cursing at him; (2) an incident in 2000 where Officer Seitz physically pushed his supervisor; and (3) Officer Seitz indicated that there had been three or four internal investigations and he had been called into the Sergeant's office maybe a dozen times for disciplinary matters since he joined the force around 1987. Dkt. 83 at 17-20.

As to the 1994 incident, it occurred a number of years prior to Chief Cool's tenure, and the prior Chief, Chief Lockheed Reader, formally disciplined Officer Seitz. Dkt. 73, Ex. G, at 49. In regard to the second incident, it occurred prior to Chief Cool's tenure and when he had been on the job approximately two to three days he received an investigation report about it. Dkt. 73, Ex. F, at 32. Chief Cool and Commander Jim Collyer determined that a letter of reprimand was adequate punishment for the incident. *Id.* In examining Plaintiffs' contention that Officer Seitz acknowledged three or four other internal investigations, it is clear from the evidence that these investigations found that the complaints were unsustained. Dkt. 87, Ex. B, at 66-67. Defendants point out that when further questioned about Officer Seitz's admission that he had been in the sergeant's office around a dozen times, Officer Seitz explained it was for things like using the radio properly, being clearer in his police reports, and using proper grammar in his police reports. Dkt. 87, Ex. B, at 95-96.

Considering the evidence in the light most favorable to the Plaintiffs, the record does not reveal evidence which could establish deliberate indifference on the part of Chief Cool in any alleged failure to supervise Officer Seitz. There was no evidence that Chief Cool was aware or reasonably should have been aware that Officer Seitz would have engaged in behavior that resulted in a violation of Loomis' constitutional rights, if indeed he did. Each incident Plaintiffs point to was addressed - either Officer Seitz was punished or the complaint was found

to be without substance. The Summary Judgment Motion dismissing Chief Cool should be granted.

### E. PUNITIVE DAMAGES

"A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "[T]his threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness." *Id.*

Considering the evidence in the light most favorable to Plaintiffs, the jury could find that Officer Seitz's conduct was motivated by a "evil motive or intent" or that his conduct involved "reckless or callous indifference" to Loomis' federally protected rights. *Id.* In contrast, Plaintiffs offer no evidence that Chief Cool's conduct was improperly motivated or that it raised to the level of reckless or callous indifference. The Summary Judgment Motion on the issue of punitive damages should be denied as to Officer Seitz, but granted as to Chief Cool.   **F.**

### CITY OF PUYALLUP POLICE DEPARTMENT AS A DEFENDANT

Defendant moves for Summary Judgment, in part, by noting that the "City of Puyallup Police Department, a municipal corporation" is not an entity that can be sued. Dkt. 72 at 12. Defendants are correct. This Court will construe Plaintiffs' "request that the Court recognize the intended and more accurately named defendant as being the 'City of Puyallup'" as a Motion to Amend pursuant to Fed. Rule Civ. P. 15. Because Defendants have been on notice that whether the City properly trained their officers to handle situations regarding mentally ill persons is an issue in this case, and no prejudice to Defendants is shown, Plaintiffs should be given leave to amend their Complaint. An amended Complaint bearing the proper caption should be filed and served forthwith and not later than ten days from the date of this Opinion and Order. (One can only speculate about why, when it became apparent to defense counsel that the City was erroneously named in the caption, a quick call or email was not sent to Plaintiffs' counsel advising them of the error, and why, when Plaintiffs' counsel learned of the error, they did not

OPINION AND ORDER - 13

immediately move to amend under Fed. Rule Civ. P. 15.  In any event, no harm has apparently occurred, except perhaps a waste of lawyers' time, and justice clearly requires leave to amend to correct this small error.  Litigation is not a game of "gotcha.")

### E. MOTION TO FILE OVERLENGTH BRIEFS

On April 22, 2005, Defendants filed a motion to file Replies that are longer than the local rules allow.  Dkt. 92.  Considering the various issues addressed, this motion should be granted.

## III. ORDER

Therefore, it is now **ORDERED** that:

(1) Defendants' Motion to file Overlength Briefs (Dkt. 92) is **GRANTED**;

(2) Defendants Seitz and Cool's Motion for Summary Judgment (Dkt.75) is **Granted, in part, only as follows**:  Officer Seitz had probable cause to arrest Loomis; Chief Cool is entitled to qualified immunity; punitive damages are not appropriate as to Chief Cool; and the "City of Puyallup Police Department, a municipal corporation" is not a proper defendant; the motion is **DENIED** as to all other issues;

(3) Defendants' Motion for Summary Judgment re: Federal Claims (Dkt. 72) is **DENIED**.

(4) Plaintiffs' motion to amend their complaint to reflect the proper defendant, that is the City of Puyallup, (Dkt. 82) is **GRANTED**.

The Clerk of the Court is instructed to send uncertified copies of this Opinion and Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 3rd day of May, 2005.

Robert J. Bryan
U.S. District Judge